**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 16, 2013

The Honorable Paul G. Gardephe
United States District Judge
Southern District of New York
United States District Courthouse
40 Foley Square, Room 2204
New York, New York 10007

      Re:    United States v. Ingrid Lederhaas-Okun
                Docket No. 13-CR-00560

Dear Judge Gardephe:

      Please find enclosed one victim impact statement for the above- captioned case scheduled for sentencing December 23, 2013.

      Thank you for your attention.

      Very truly yours,

      PREET BHARARA
      United States Attorney

by: *Wendy Olsen*
      Wendy Olsen-Clancy
      Victim Witness Coordinator
      (212) 637-1028

Enclosures:

cc:    Assistant United States Attorney Rosemary Nidiry, with attachments
       United States Probation Officer Walter Quinn, with attachments
       Sabrina P. Shroff, Esq., with attachments

## ARNOLD & PORTER LLP

**Marcus A. Asner**
Marcus.Asner@aporter.com

+1 212.715.1789
+1 212.715.1399 Fax

399 Park Avenue
New York, NY 10022-4690

September 27, 2013

**VIA E-MAIL**

Wendy Olsen-Clancy
Victim/Witness Coordinator
United States Attorney's Office
    for the Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

    Re:    Victim Impact Statement of Tiffany and Company as to Defendant Ingrid
             Lederhaas-Okun (1:13-cr-00560-PGG)

Dear Ms. Olsen-Clancy,

    Tiffany and Company ("Tiffany") respectfully submits this victim impact statement in connection with the upcoming sentencing of Defendant Ingrid Lederhaas-Okun. Lederhaas-Okun, a former Tiffany employee, was arrested on July 2, 2013, after being charged in a sealed criminal complaint, 13 Mag. 1590, filed on June 19, 2013. She pleaded guilty on July 22, 2013, pursuant to a plea agreement, to a one-count criminal information charging her with interstate transportation of stolen property. The defendant currently is scheduled to be sentenced on December 10, 2013, at 2:30 pm.

    On July 26, 2013, in accordance with the terms of the plea agreement, the Court entered a Consent Preliminary Order of Forfeiture/Money Judgment. The Order requires that a money judgment in the amount of $2,114,873 be entered against the defendant as a part of her criminal

# ARNOLD & PORTER LLP

September 27, 2013
Page 2

sentence, and states that she had consented to the forfeiture of "Specific Property," which is defined as "any items seized from her residence at the time of her arrest on July 2, 2013 that are items that are or have been produced by or available for purchase from the Jewelry Company." Finally, the plea agreement provides that Lederhaas-Okun will make restitution in the amount of $2,239,873, according to a plan established by the Court.

As we detail below, Tiffany suffered significant harm from Lederhaas-Okun's multi-year criminal scheme to steal and sell for profit stolen Tiffany merchandise. Most directly, Tiffany was harmed financially because of the large quantity of valuable merchandise that she stole. But Lederhaas-Okun harmed Tiffany in other ways as well. The investigation into her crimes was expensive, time consuming, and disruptive to Tiffany's business operations. The news of Lederhaas-Okun's arrest and guilty plea also inflicted considerable harm. The publicity most immediately inflicted a blow to Tiffany's reputation as a place of integrity with employees who are above reproach. The revelation of her dishonesty also tore at the fabric of the culture of ethical conduct that Tiffany has so carefully cultivated: Lederhaas-Okun was a trusted and well-regarded employee for many years; however, she abused that trust by stealing and lying repeatedly to her co-workers—people who relied on her and respected her.

We respectfully submit that the Court, in meting out an appropriate sentence, should consider the harms that Lederhaas-Okun inflicted. We also request that the Court award restitution to Tiffany in the amount of $2,239,873, as set forth in the plea agreement, for the pecuniary losses that it has suffered as a direct result of Lederhaas-Okun's criminal scheme. We

# ARNOLD & PORTER LLP

September 27, 2013
Page 3

note that Tiffany reserves the right to update its request for restitution to reflect additional legal expenses that it incurs in its ongoing participation in the investigation and prosecution of the offense.

We respectfully request that the Office submit this victim impact statement to the Court and the United States Probation Office for their consideration in connection with Lederhaas-Okun's sentencing.

## Background

Tiffany is a multi-national corporation that specializes in the manufacture and sale of luxury jewelry, with its headquarters located in New York, New York. Tiffany enjoys one of the most prestigious brands in the world, and is well known for its commitment to brand protection. Ingrid Lederhaas-Okun was an employee of Tiffany since February 1991, and held the title of Vice President of Product Development from August 2004 through the date of her termination.

Lederhaas-Okun took advantage of her role as a Vice President of Product Development both to steal Tiffany product and then to cover up that theft. First, Lederhaas-Okun was able to steal Tiffany product because her job gave her ready access to Tiffany merchandise. One aspect of her job involved determining whether pieces of Tiffany jewelry could be produced more cost effectively or in a better way. At times, this process involved obtaining Tiffany product from inventory, and sending samples to various outside vendors, so that the vendors could evaluate

# ARNOLD & PORTER LLP

September 27, 2013
Page 4

ways to improve production.[1] In fact, Lederhaas-Okun would use her position to obtain possession of numerous items of Tiffany jewelry, sneak that jewelry out of the building, and then sell the jewelry to a buyer—all for a significant profit.

Second, Lederhaas-Okun was able to cover up her theft because her position as Vice President of Product Development gave her the authority to "write off" inventory—for example, if a piece of jewelry had been sent to a vendor and was damaged in transit.[2] Lederhaas-Okun's authority to write off merchandise gave her the opportunity she needed to simply write off the merchandise that she had stolen by claiming falsely, for example, that the merchandise had been lost or destroyed by the vendor.

On February 13, 2013, Tiffany terminated Lederhaas-Okun's employment as a part of a reduction-in-force unrelated to the offense at issue. Lederhaas-Okun had not been told in advance of her termination, and, consistent with Tiffany practices, was asked to leave the building shortly after she received that notice. On February 14, 2013, Tiffany discovered that approximately 165 items of merchandise with an aggregate retail value of over $1.2 million were still signed out to her custody at the time of her termination. Tiffany employees conducted a thorough search of Lederhaas-Okun's work area, but were unable to find the missing items.

---

[1] After studying particular items, vendors are supposed to return the items to Tiffany, or, if the items are damaged or destroyed during the process, return the raw material.

[2] In such a situation, the damaged merchandise ordinarily should be returned to Tiffany so that the raw material can be recycled, enabling Tiffany to recover some of the expense caused by the damage.

# ARNOLD & PORTER LLP

September 27, 2013
Page 5

Each of the 165 items of merchandise was valued at under $25,000, with all but 18 of the items valued at under $10,000. The items represented a wide range of Tiffany merchandise, including numerous diamond bracelets, diamond drop and hoop earrings, diamond rings, rings with precious stones, and platinum and diamond pendants.[3]

Tiffany immediately reached out to Lederhaas-Okun concerning the missing merchandise. In e-mails spanning the remainder of February 2013 and during a phone interview conducted on February 27, 2013, Lederhaas-Okun confirmed that she had requested the missing merchandise from inventory, and that she had received it.[4] She attempted to justify her requests for the particular items by claiming falsely that she needed them for a presentation that she was working on for her supervisor. She falsely maintained that she had left the missing merchandise on her desk in a white envelope on the day of her termination, thereby seeking to cast suspicion on her former co-workers and subordinates. Lederhaas-Okun also suggested (remarkably, in light of her long career in the jewelry business) that she might have thrown out the merchandise accidentally "in [her] haste to depart the office" on the day of her termination.

---

[3] Tiffany has provided detailed records concerning these items to the Government and can provide the same to the Court or the Probation Department upon request.

[4] Tiffany has provided these materials to the Government and would be happy to provide copies to the Court, if the Court wishes to inspect them.

# ARNOLD & PORTER LLP

September 27, 2013
Page 6

Tiffany investigators conducted both physical and electronic searches of Lederhaas-Okun's workspace, as well as the floor that she worked on.[5] They interviewed a number of employees and conducted an inventory of all merchandise on location. They also reviewed security camera footage, inspected the trash, and spoke with vendors in an effort to locate the missing merchandise. All of this work proved fruitless; the missing merchandise was not located and there was no evidence that Lederhaas-Okun had been preparing a presentation for her supervisor, as she had represented to Tiffany.

Tiffany subsequently retained legal counsel—Arnold & Porter LLP—to assist in the investigation and with the Government's prosecution.

### This Prosecution and Tiffany's Assistance

Tiffany, through its legal counsel, approached the Government concerning Lederhaas-Okun and the missing merchandise. Tiffany provided the results of its investigation to the Government, as well as detailed information about Lederhaas-Okun's significant write-off history of Tiffany merchandise in recent years, and continues to assist with the investigation and prosecution.

As part of its assistance, Tiffany, among other things, has produced hundreds of pages of documents and electronic data relating to Lederhaas-Okun's employment at Tiffany, the missing merchandise (including supporting documentation for Lederhaas-Okun's requests of the

---

[5] Although Tiffany requested on more than one occasion that Lederhaas-Okun come into the office to assist in the search for the missing merchandise, she refused.

# ARNOLD & PORTER LLP

September 27, 2013
Page 7

merchandise and receipt thereof), and its investigation generally. Tiffany also provided information about its business conduct and security policies, as well as information concerning Tiffany merchandise listed for sale on eBay and other similar resale websites that matched the missing merchandise. Throughout the investigation, Tiffany expended substantial time and resources in having various sets of data analyzed and assembled in a format that would be useful to the Government's investigation.

Tiffany's team also met on multiple occasions with the Assistant U.S. Attorney and FBI Agents handling the case—in person, over the telephone, and by e-mail—to educate them on underlying facts of the case as it pertains to Tiffany. Tiffany also provided expert assistance to help the Government identify hundreds of items of jewelry seized from Lederhaas-Okun's home on the morning of her arrest to determine whether such items were Tiffany merchandise.

Tiffany incurred considerable expense in cooperating with the Government's investigation and prosecution. Specifically, by a conservative analysis, through approximately July 15, 2013, Tiffany had incurred a total of $125,000 in expenses, including attorneys' fees. It has continued to incur expenses since then. In addition, a number of Tiffany personnel have spent numerous hours in meetings with the Government, in meetings with counsel, and in efforts to gather material and evidence in the custody of Tiffany—all to assist in the investigation and prosecution of this case.

The harm to Tiffany is not limited to the stolen items or even to the expense of the investigation and assistance with the prosecution. As noted, Tiffany is well known for its

# ARNOLD & PORTER LLP

September 27, 2013
Page 8

commitment to brand protection. To this end, Tiffany rarely authorizes the sale of merchandise by merchants other than Tiffany, and it expends significant resources to ensure that legitimate Tiffany jewelry is sold only through the appropriate channels. Tiffany believes that Lederhaas-Okun's actions have likely led to the resale of Tiffany merchandise through unauthorized channels, and, thus, her actions have inflicted harm to the Tiffany brand. Also, as previously stated, Lederhaas-Okun abused the trust of her co-workers, and her crimes inflicted a blow to Tiffany's reputation as a place of integrity with employees who are above reproach.

## Conclusion

Tiffany's ordeal with Lederhaas-Okun has been sad and disturbing. Lederhaas-Okun was a longstanding and trusted executive, who held herself out as a professional and loyal employee. In fact, despite her façade, we now know that she had been stealing and reselling Tiffany merchandise for profit for years. Because of her crimes and disloyalty, Tiffany had to spend months investigating her actions, and assisting in the Government's investigation and prosecution.

We respectfully submit that the Court should sentence Lederhaas-Okun to a sentence that reflects the harm that she has inflicted upon Tiffany, as well as society in general. We also respectfully submit that the Court should enter an award of restitution to Tiffany in the amount of $2,239,873, as set forth in the plea agreement. Again, Tiffany reserves the right to update its request for restitution to reflect additional legal expenses that it incurs during its participation in

# ARNOLD & PORTER LLP

September 27, 2013
Page 9

the investigation and prosecution of the offense. We are happy to provide further information as the Court, the Probation Department, or the Government requires.

Sincerely,

Marcus A. Asner

cc: Assistant U.S. Attorney Rosemary Nidiry