SUPREME COURT OF NEW YORK
NEW YORK COUNTY

------------------------------------------------------ x

THOSE INTERESTED UNDERWRITERS
AT LLOYD'S, LONDON who subscribed to
the policy of insurance numbered
BO80111433W12, as subrogees and
assignees of Tiffany & Co.,

                Petitioner,

   -against-

INGRID LEDERHAAS-OKUN; ROBERT
OKUN; JOHN DOES 1-10; and JANE
DOES 1-10,

                Respondents.

------------------------------------------------------ x

Index No. _____

**SUMMONS**

Plaintiffs designate New York County as the place of trial

The basis for venue is the county designated by the plaintiff, the place where the cause of action arose, and the residence of the assignor of the cause of action

**TO THE ABOVE-NAMED DEFENDANTS:**

     **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve

a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of

appearance on the plaintiffs' attorney(s) within twenty (20) days after service of this summons,

exclusive of the day of service (or within thirty (30) days after service is complete if this

summons is not personally delivered to you within the State of New York).

     **YOU ARE HEREBY NOTIFIED THAT** should you fail to answer or appear, a

judgment will be entered against you by default for the relief demanded below.

Dated: New York, New York
       February 12, 2014

LANKLER CARRAGHER & HORWITZ LLP

By: _____
     Owen B. Carragher, Jr.
     Peter J. Rossi

415 Madison Avenue, 16th Floor
New York, New York 10017
Tel: (212) 812-8910
Fax: (212) 812-8920

*Attorneys for Plaintiffs Those Interested
Underwriters at Lloyd's, London who subscribed
to the policy of insurance numbered
BO80111433W12, as subrogees and assignees of
Tiffany & Co.*

SUPREME COURT OF NEW YORK
NEW YORK COUNTY

```
-------------------------------------------------- x
                                                    :
THOSE INTERESTED UNDERWRITERS                       :
AT LLOYD'S, LONDON who subscribed to                :      Index No. _____
the policy of insurance numbered                    :
BO80111433W12, as subrogees and                     :
assignees of Tiffany & Co.,                         :      VERIFIED COMPLAINT
                                                    :
                           Petitioner,              :
                                                    :
         -against-                                  :
                                                    :
INGRID LEDERHAAS-OKUN; ROBERT                       :
OKUN; JOHN DOES 1-10; and JANE                      :
DOES 1-10,                                          :
                                                    :
                           Respondents.             :
                                                    :
-------------------------------------------------- x
```

Plaintiffs Those Interested Underwriters At Lloyd's, London who subscribed to the

policy of insurance numbered BO80111433W12 ("Underwriters"), as subrogees and assignees of

Tiffany & Co. ("Tiffany"), by and through their undersigned attorneys, Lankler Carragher &

Horwitz LLP, bring this Verified Complaint against the Defendants, Ingrid Lederhaas-Okun,

Robert Okun, John Does 1-10, and Jane Does 1-10, and allege as follows:

## THE PARTIES

1.       Underwriters are foreign insurers conducting business in London, England in the

Lloyd's, London insurance marketplace and are authorized to do business in the State of New

York.  Underwriters are the insurers who subscribed to the policy of insurance numbered

BO80111433W12, insuring Tiffany & Co. for the two year period commencing on February 1,

2012 to January 31, 2014 (the "Policy").

2.     Tiffany & Co. ("Tiffany") is a corporation duly organized and existing under and by virtue of the laws of the State of New York, and has its principle place of business at 727 Fifth Avenue, New York, New York 10022. Tiffany was insured by Underwriters under the Policy for the loss of certain property from a theft, which Defendant, Ingrid Lederhaas-Okun, plead guilty to in Federal Court.

3.     Ingrid Lederhaas-Okun is a former Vice President of Product Development for Tiffany, who plead guilty to stealing a substantial amount of jewelry and merchandise from Tiffany's New York location between 2008 and February 2013 when her employment was terminated. Ms. Lederhaas-Okun's last known address is 1 Timber Lane, Darien, Connecticut 06820. In connection with her guilty plea, Ms. Lederhaas-Okun was sentenced on December 23, 2013 to serve one year and one day in a Federal prison located in West Virginia. She is currently at liberty and is scheduled to surrender in West Virginia on March 24, 2014.

4.     Robert Okun was married to Ms. Lederhaas-Okun during the relevant time period from 2005 to 2013 in which, according to her plea, she was stealing from Tiffany. Upon information and belief, Mr. Okun received proceeds from the sale of goods stolen by Ms. Lederhaas-Okun from Tiffany. Upon further information and belief, Mr. Okun assisted Ms. Lederhaas-Okun with the sale of goods stolen from Tiffany by Ms. Lederhaas-Okun and in the concealment of the theft. Mr. Okun's last known address is 1 Timber Lane, Darien, Connecticut 06820.

5.     John Doe-1 is, upon information and belief, an international buyer and reseller of jewelry with an office in midtown Manhattan. Upon information and belief, John Doe-1 purchased stolen goods from Ms. Lederhaas-Okun and an unidentified female, Jane Doe-1, and made payments for such goods in the approximate amount of $1.3 million. Upon information and belief,

some of the payments made by John Doe-1 for the stolen goods were paid to the defendant Robert Okun by check.

6. Jane Doe-1, upon information and belief, is an acquaintance of Ms. Lederhaas-Okun who at one time resided in Sag Harbor, New York. Upon information and belief, Jane Doe-1 assisted Ms. Lederhaas-Okun with the sale of the stolen goods, including sales made to John Doc-1, and with the concealment of the theft.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over Ms. Lederhaas-Okun pursuant to Sections 302(a)(1) and 302(a)(2) of the CPLR because she transacted business in New York throughout the relevant time period, and she committed the overt tortuous acts of theft giving rise to this action in New York.

8. This Court has jurisdiction over Mr. Okun pursuant to Section 302(a)(1) and 302(a)(2) of the CPLR because upon information and belief, during the relevant time period he transacted business and provided services in New York, and it is alleged upon information and belief that he was a co-conspirator of Ms. Lederhaas-Okun in connection with the overt tortious acts she committed in New York giving rise to this action. Upon information and belief, Mr. Okun was aware of the tortuous acts being committed in New York, and to their effect in New York, and he benefitted from those acts.

9. This Court has jurisdiction over John Doe-1 and Jane Doe-1 pursuant to Sections 301 and/or 302(a)(1), or 302(a)(2) of the CPLR, because upon information and belief, both are residents of New York and/or transact business in New York, or were involved in some manner, had knowledge of, and benefitted from the tortuous conduct that is the subject of this action.

10. Venue is proper in this Court under Sections 503(a), 503(c), and/or 503(e) of the CPLR.

## FACTS COMMON TO ALL CAUSES OF ACTION

11.     In or about February 2013, Tiffany discovered that the defendant Ingrid Lederhaas-Okun, last employed by Tiffany as Vice President of Product Development, stole a substantial amount of jewelry and merchandise from Tiffany (the "Theft").

12.     The Theft was reported to the FBI and Federal prosecutors, and an investigation was conducted which lead to a criminal complaint being filed by the United States Attorney for the Southern District of New York, dated June 19, 2013, naming Ingrid Lederhaas-Okun as the defendant (the "Criminal Complaint"). A true and correct copy of the Criminal Complaint is attached hereto as Exhibit A.

13.     On July 26, 2013, Ms. Lederhaas-Okun plead guilty to stealing jewelry from her former employer Tiffany during the time from 2008 to 2013. A true and correct copy of the transcript of her plea is attached hereto as Exhibit B. Upon information and belief, Ms. Lederhaas-Okun's theft from Tiffany began in 2005.

14.     Also on July 26, 2013, Ms. Lederhaas-Okun entered into a consent to forfeiture and money judgment of $2,114,873 (the "Forfeiture Order"). A true and correct copy of the Forfeiture Order is attached hereto as Exhibit C.

15.     On December 23, 2013, Ms. Lederhaas-Okun was sentenced to serve a term in Federal prison of one year and one day and to restitution of $2,239,873 (the "Judgment"). A true and correct copy of the Judgment is attached hereto as Exhibit D.

16.     According to the Judgment, Ms. Lederhaas-Okun has been directed to surrender at a Federal prison in West Virginia to begin serving her sentence on March 24, 2014.

17.     Moreover, upon information and belief, and based in part upon the allegations set forth in the Criminal Complaint, Ms. Lederhaas-Okun involved others in the Theft and Loss.

18.     Incorporated in the Criminal Complaint (Exhibit A) is an affidavit from a Special Agent in the FBI who was personally involved in the investigation into the Theft.

19.     Upon information and belief, and according to the Criminal Complaint, Ms. Lederhaas-Okun sold a significant amount of the stolen goods to a jewelry company with a midtown Manhattan address, which is only identified in the Criminal Complaint as "Jewelry Reseller," but here we will refer to the unidentified entity as the "John Doe-1."

20.     Upon information and belief, and according to the Criminal Complaint, documents exist regarding the sales of the stolen goods to John Doe-1, including purchase forms, emails, and checks.

21.     Upon information and belief, and according to the Criminal Complaint, there are checks from John Doe-1 showing payments for the stolen goods in an amount of approximately $1.3 million, in connection with at least 31 different transactions.

22.     Upon information and belief, and according to the Criminal Complaint, some of the purchase forms indicate that payment was made by John Doe-1 directly to Robert Okun, and those same purchase forms indicate the seller in those instances to be a women with an address in Sag Harbor, New York, who is characterized in the Criminal Complaint as an acquaintance of Ms. Lederhaas-Okun ("Jane Doe-1").

23.     Upon information and belief, and according to the Criminal Complaint, some of the jewelry sold to John Doe-1 included internal Tiffany documentation which indicated that the goods originally came from Tiffany.

24.     Tiffany conducted an investigation into the full scope of the Theft and determined that the value of the goods stolen was not limited to the amount set forth in the Forfeiture Order or

Restitution Order. According to the records of Tiffany, Ms. Lederhaas-Okun was responsible for the theft of goods with an insured value of $5,373,661 (the "Loss").

25. Underwriters insured Tiffany during the relevant time period, and Tiffany made a claim for indemnification for the Loss (the "Claim"). In connection with the settlement of the Claim, all rights, title, and interest in the stolen property and any claims and rights Tiffany has against the Defendants arising from the Theft and the Loss have been assigned and subrogated to Underwriters.

## FIRST CAUSE OF ACTION

### (Conversion as against Ms. Lederhaas-Okun)

26. Underwriters repeat and re-allege the allegations of paragraphs 1 though 25 of this Verified Complaint as if fully set forth herein.

27. Tiffany had an immediate superior right of possession of any of the goods stolen in the Theft and/or to the proceeds from their unauthorized sale.

28. Ms. Lederhaas-Okun exercised unauthorized dominion over the goods stolen in the Theft and the proceeds from their unauthorized sale.

29. Ms. Lederhaas-Okun's exercise of unauthorized dominion over the goods stolen in the Theft, and the proceeds from their unauthorized sale, was to the exclusion of Tiffany.

30. Tiffany, and pursuant to assignment and subrogation Underwriters, were damaged as a result of Ms. Lederhaas-Okun's unauthorized dominion over the goods stolen in the Theft and the proceeds from their unauthorized sale, in an amount of not less than $5,373,661, plus interest.

## SECOND CAUSE OF ACTION

### (Fraud as against Ms. Lederhaas-Okun)

31.     Underwriters repeat and re-allege the allegations of paragraphs 1 though 30 of this Verified Complaint as if fully set forth herein.

32.     Ms. Lederhaas-Okun intentionally and knowingly made false statements and created false business records by misrepresenting the status, location, disposition, and/or condition of certain goods in her department.

33.     Ms. Lederhaas-Okun made the misrepresentations for the purpose of facilitating and concealing the Theft.

34.     Ms. Lederhaas-Okun intended for the misrepresentations to be relied upon.

35.     Tiffany justifiably relied upon the intentional and knowing misrepresentations made by Ms. Lederhaas-Okun.

36.     As a result of the reliance on Ms. Lederhaas-Okun's intentional and knowing misrepresentations, Tiffany, and pursuant to assignment and subrogation Underwriters, have been damaged in the amount of not less than $5,373,661, plus interest.

## THIRD CAUSE OF ACTION

### (Breach of Fiduciary Duty as against Ms. Lederhaas-Okun)

37.     Underwriters repeat and re-allege the allegations of paragraphs 1 though 36 of this Verified Complaint as if fully set forth herein.

38.     At all relevant times, Ms. Lederhaas-Okun had a fiduciary duty to Tiffany arising from her employment as a senior manager and/or Vice President of Product Development.

39.     Ms. Lederhaas-Okun engaged in misconduct, including the falsification of business records and making of false statements in order to facilitate and conceal the theft of goods which

she converted to her own use at the unauthorized exclusion of the entity to which she owed a duty of loyalty.

40.     As a result of Ms. Lederhaas-Okun's breach of her fiduciary duty, Tiffany, and pursuant to assignment and subrogation Underwriters, have been damaged in the amount of not less than $5,373,661, plus interest.

## FOURTH CAUSE OF ACTION

**(Breach of Fiduciary Duty/Faithless Servant claim as against Ms. Lederhaas-Okun)**

41.     Underwriters repeat and re-allege the allegations of paragraphs 1 though 40 of this Verified Complaint as if fully set forth herein.

42.     At all relevant times, Ms. Lederhaas-Okun had a fiduciary duty to Tiffany arising from her employment as a senior manager and/or Vice President in the Product Development department.

43.     Between 2008 and February of 2013, Ms. Lederhaas-Okun engaged in misconduct, including the falsification of business records and the making of false statements in order to conceal the theft of goods, which she converted to her own use at the unauthorized exclusion of the entity to which she owed a duty of loyalty.

44.     Ms. Lederhaas-Okun's disloyal and illegal activity was related to the performance of her duties, and permeated her service in material and substantial part, and in direct violation of the policies of her employer Tiffany.

45.     As a result of her breach of her fiduciary duty, Tiffany, and pursuant to assignment and subrogation Underwriters, have been damaged, and pursuant to the Faithless Servant Doctrine, Underwriters are entitled to the forfeiture of all of the compensation paid to her during the period of time in which she was a faithless servant, plus interest.

## FIFTH CAUSE OF ACTION

### (Conversion as against Robert Okun)

46.    Underwriters repeat and re-allege the allegations of paragraphs 1 though 45 of this Verified Complaint as if fully set forth herein.

47.    Tiffany had an immediate superior right of possession of any of the goods stolen in the Theft and/or to their proceeds.

48.    Ms. Lederhaas-Okun exercised unauthorized dominion over the goods stolen in the Theft and over the proceeds from their unauthorized sale.

49.    Upon information and belief, proceeds from the unauthorized sale of the stolen goods to John Doe-1 were deposited into a joint bank account shared by Robert Okun and Ms. Lederhaas-Okun, in an amount of approximately $1.3 million.

50.    Upon information and belief, Robert Okun had or has possession of stolen goods and delivered stolen goods to John Doe-1 in connection with their unauthorized sale.

51.    Upon information and belief, Robert Okun received proceeds directly from the sale of the stolen goods to John Doe-1.

52.    Upon information and belief, for the approximate eight years that she was engaged in stealing goods from Tiffany, Ms. Lederhaas-Okun brought a significant amount of the stolen goods into the home she shared with Robert Okun.

53.    Upon information and belief, during the relevant time period Mr. Okun made a corrupt agreement with his wife to participate in the furtherance of the Theft, including participation in the sale of stolen goods and the concealment of the Theft and unauthorized sales.

54. Upon information and belief, by his involvement in the sale of the stolen goods and the concealment of the Theft, Robert Okun intentionally participated in the furtherance of the Theft.

55. Tiffany, and pursuant to assignment and subrogation Underwriters, were damaged as a result of Robert Okun's participation in the conversion of the goods and the proceeds from their unauthorized sale, in an amount of not less than $5,373,661, plus interest.

## SIXTH CAUSE OF ACTION

### (Aiding and abetting fraud as against Robert Okun)

56. Underwriters repeat and re-allege the allegations of paragraphs 1 though 55 of this Verified Complaint as if fully set forth herein.

57. Ms. Lederhaas-Okun intentionally and knowingly made false statements and created false business records by misrepresenting the status, location, disposition, and/or condition of certain goods in her department.

58. Ms. Lederhaas-Okun made the misrepresentations for the purpose of facilitating and concealing the Theft.

59. Ms. Lederhaas-Okun intended for the misrepresentations to be relied upon.

60. Tiffany justifiably relied upon the intentional and knowing misrepresentations made by Ms. Lederhaas-Okun and were damaged as a result.

61. Upon information and belief, Robert Okun had knowledge of the fraud committed by his then wife, Ms. Lederhaas-Okun.

62. Upon information and belief, proceeds from the unauthorized sale of the stolen goods to John Doe-1 were deposited into a joint bank account shared by Robert Okun and Ms. Lederhaas-Okun, in an amount of approximately $1.3 million.

63. Upon information and belief, Robert Okun had or has possession of stolen goods and delivered stolen goods to John Doe-1 and/or Jane Doe-1 in connection with their unauthorized sale.

64. Upon information and belief, Robert Okun received proceeds directly from John Doe-1 in connection with the unauthorized sale of stolen goods.

65. Upon information and belief, for the approximate eight years that she was engaged in defrauding and stealing goods from Tiffany, Ms. Lederhaas-Okun brought a significant amount of the stolen goods into the home she shared with Robert Okun.

66. Upon information and belief, Robert Okun by his involvement in the sale of the stolen goods and the concealment of the Theft and/or Fraud, Robert Okun intentionally participated in the furtherance of the Fraud.

67. Tiffany, and pursuant to assignment and subrogation Underwriters, were damaged as a result of Robert Okun's participation in the Fraud in an amount of not less than $5,373,661, plus interest.

## SEVENTH CAUSE OF ACTION

### (Unjust Enrichment as against Ms. Lederhaas-Okun and Robert Okun)

68. Underwriters repeat and re-allege the allegations of paragraphs 1 though 67 of this Verified Complaint as if fully set forth herein.

69. At all relevant times, Ms. Lederhaas-Okun had a fiduciary duty to Tiffany arising from her employment as a senior manager and/or Vice President in the Product Development department.

70. Ms. Lederhaas-Okun engaged in misconduct, including the falsification of business records and the making of false statements in order to conceal the theft of goods, which she

converted to her own use at the unauthorized exclusion of the entity to which she owed a duty of loyalty.

71. As a result of her breach of her fiduciary duty, Tiffany, and pursuant to assignment and subrogation Underwriters, have been damaged in the amount of not less than $5,373,661, plus interest.

72. Upon information and belief, proceeds from the unauthorized sale of the stolen goods to John Doe-1 were deposited into a joint bank account shared by Robert Okun and Ms. Lederhaas-Okun, in an amount of approximately $1.3 million.

73. Upon information and belief, Robert Okun had or has possession of stolen goods and delivered stolen goods to John Doe-1 and/or Jane Doe-1 in connection with their unauthorized sale.

74. Upon information and belief, Robert Okun received proceeds directly from John Doe-1 in connection with the unauthorized sale of stolen goods.

75. Upon information and belief, for the approximate eight years that she was engaged in defrauding and stealing goods from Tiffany, Ms. Lederhaas-Okun brought a significant amount of the stolen goods into the home she shared with Robert Okun.

76. In connection with the Forfeiture Order (Exhibit C) and/or Judgment (Exhibit D), the federal government has frozen and/or seized certain property, including certain pieces of jewelry allegedly recovered from the home of Ms. Lederhaas-Okun and Robert Okun, and approximately $220,000 of funds in an account in the name of Ms. Lederhaas-Okun and Robert Oken. Based upon the $1.3 million allegedly received from the unauthorized sale of the stolen goods, and the size of the Loss, it would appear that millions of dollars worth of stolen jewelry and/or the proceeds from the unauthorized sale of such jewelry remain unaccounted for.

77.     Upon information and belief, defendants Robert Okun and Ms. Lederhaas-Okun were enriched by the unauthorized possession of the stolen goods and the proceeds from their unauthorized sale, that enrichment is at Tiffany's, and pursuant to assignment and subrogation Underwriters', expense and equity and good conscience require that the defendants make restitution in the amount of such unjust enrichment.

## EIGHTH CAUSE OF ACTION

### (Constructive Trust as against Ms. Lederhaas-Okun and Robert Okun)

78.     Underwriters repeat and re-allege the allegations of paragraphs 1 though 77 of this Verified Complaint as if fully set forth herein.

79.     At all relevant times, Ms. Lederhaas-Okun had a fiduciary duty to Tiffany arising from her employment as a senior manager and/or Vice President in the Product Development department.

80.     Ms. Lederhaas-Okun engaged in misconduct, including the falsification of business records and the making of false statements in order to conceal the theft of goods, which she converted to her own use at the unauthorized exclusion of the entity to which she owed a duty of loyalty.

81.     As a result of her breach of her fiduciary duty, Tiffany, and pursuant to assignment and subrogation Underwriters, have been damaged in the amount of not less than $5,373,661, plus interest.

82.     Upon information and belief, proceeds from the unauthorized sale of the stolen goods to John Doe-1 were deposited into a joint bank account shared by Robert Okun and Ms. Lederhaas-Okun, in an amount of approximately $1.3 million.

83. Upon information and belief, Robert Okun had or has possession of stolen goods and delivered stolen goods to John Doe-1 and/or Jane Doe-1 in connection with their unauthorized sale.

84. Upon information and belief, Robert Okun received proceeds directly from John Doe-1 in connection with the unauthorized sale of stolen goods.

85. Upon information and belief, for the approximate eight years that she was engaged in defrauding and stealing goods from Tiffany, Ms. Lederhaas-Okun brought a significant amount of the stolen goods into the home she shared with Robert Okun.

86. In connection with the Forfeiture Order (Exhibit C) and/or Judgment (Exhibit D), the federal government has frozen and/or seized certain property, including certain pieces of jewelry allegedly recovered from the home of Ms. Lederhaas-Okun and Robert Okun, and approximately $220,000 of funds in an account in the name of Ms. Lederhaas-Okun and Robert Oken. Based upon the $1.3 million allegedly received from the unauthorized sale of the stolen goods, and the size of the Loss, it would appear that millions of dollars worth of stolen jewelry and/or the proceeds from the unauthorized sale of such jewelry remain unaccounted for.

87. Upon information and belief, defendants Robert Okun and Ms. Lederhaas-Okun were enriched by the unauthorized possession of the stolen goods or the proceeds from their unauthorized sale, that enrichment is at the Tiffany's, and pursuant to assignment and subrogation Underwriters', expense and equity and good conscience require the imposition of a constructive trust against any property stolen in the Theft, as well as against any proceeds derived from the unauthorized sale of such stolen property, and over any assets purchased with those illicit proceeds.

**WHEREFORE,** Planitiffs, Those Interested Underwriters At Lloyd's, London who subscribed to the policy of insurance numbered BO80111433W12, as subrogees of Tiffany & Co., respectfully request a judgment entered as follows:

(i)      as and for the first cause of action against Ms. Lederhaas-Okun for conversion, a monetary judgment in an amount not less than $5,373,661, plus interest;

(ii)      as and for the second cause of action against Ms. Lederhaas-Okun for fraud, a monetary judgment in an amount not less than $5,373,661, plus interest;

(iii)      as and for the third cause of action against Ms. Lederhaas-Okun for breach of fiduciary duty, a monetary judgment in an amount not less than $5,373,661, plus interest;

(iv)      as and for the fourth cause of action against Ms. Lederhaas-Okun for breach of fiduciary duty under the faithless servant doctrine, an order of forfeiture of all compensation paid to Ms. Lederhaas-Okun by her employer Tiffany from 2005 to February 2013, plus interest;

(v)      as and for the fifth cause of action against Robert Okun for conversion, a monetary judgment in an amount not less than $5,373,661, plus interest;

(vi)      as and for the sixth cause of action against Robert Okun for aiding and abetting fraud, a monetary judgment in an amount not less than $5,373,661, plus interest;

(vii)      as and for the seventh cause of action against Ms. Lederhaas-Okun and Robert Okun, an order of restitution for unjust enrichment in an amount not less than $5,373,661, plus interest;

(viii)      as and for the eighth cause of action against Ms. Lederhaas-Okun and Robert Okun, an order imposing a constructive trust against any property stolen/converted in the Theft, as well as against any proceeds derived from the unauthorized sale of such stolen/converted goods, and over any assets purchased with those illicit proceeds;

together with costs and disbursements of this action and such other and further relief as the Court

deem just and proper.

Dated: New York, New York
February 12, 2014

LANKLER CARRAGHER & HORWITZ LLP

By: _____
Owen B. Carragher, Jr.
Peter J. Rossi

415 Madison Avenue, 16th Floor
New York, New York 10017
Tel: (212) 812-8910
Fax: (212) 812-8920

*Attorneys for Plaintiffs Those Interested Underwriters
At Lloyd's, London who subscribed to the policy of
insurance numbered BO80111433W12, as subrogees
and assignees of Tiffany & Co.*

## VERIFICATION

STATE OF NEW YORK    )

                            ) SS.:

COUNTY OF NEW YORK  )


Peter J. Rossi, being duly sworn, states that I am the attorney for plaintiffs in this action and that the foregoing complaint is true to my own knowledge, except as to the matters therein stated to be alleged upon information and belief, and to those matters, I believe them to be true; the grounds for my belief as to all matters not stated upon my knowledge are correspondence and other writings furnished to me by plaintiffs; and that the reason why the verification is not made by plaintiffs is that plaintiffs are foreign entities located in the United Kingdom.


_____
Peter J. Rossi

Sworn to before me this

12th day of February, 2014

J. HAYES KAVANAGH
Notary Public, State of New York
No. 60 4729604
Qualified in Westchester County
Certificate Filed in New York County
Commission Expires Sept. 30, 20 24

17

# Exhibit A

Approved: *Rosemary [signature]*
ROSEMARY NIDIRY
Assistant United States Attorney

Before: HONORABLE ~~KEVIN NATHANIEL FOX~~ ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

**13 MAG 1590**

- - - - - - - - - - - - - - - x
                        :

UNITED STATES OF AMERICA     :     <u>SEALED COMPLAINT</u>
                        :
       - v. -             :     Violation of
                        :     18 U.S.C. §§ 1343, 2314
INGRID LEDERHAAS-OKUN,      :
  a/k/a "Ingrid Okun,"      :     COUNTY OF OFFENSE:
                        :     New York
      Defendant.         :
                        :

- - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     Elliot C. McGinnis, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

<div align="center">

**COUNT ONE**
<u>(Wire Fraud)</u>

</div>

     1. From at least in or about January 2011, up to and including in or about February 2013, in the Southern District of New York and elsewhere, INGRID LEDERHAAS-OKUN, a/k/a "Ingrid Okun," the defendant, having devised or intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, the defendant fraudulently procured and resold jewelry from an international jewelry company based in midtown Manhattan (the "Jewelry Company").

     (Title 18, United States Code, Section 1343.)

## COUNT TWO
### (Interstate transportation of stolen property)

2.     From at least in or about January 2011, up to and
including in or about February 2013, in the Southern District of
New York and elsewhere, INGRID LEDERHAAS-OKUN, a/k/a "Ingrid
Okun," the defendant, would and did transport, transmit, and
transfer in interstate and foreign commerce goods, wares,
merchandise, securities and moneys, of the value of $5,000 and
more, knowing the same to have been stolen, converted and taken
by fraud, to wit, the defendant transported and/or caused to be
transported jewelry that she had stolen from the Jewelry
Company, located in Manhattan, to her home in Connecticut.

(Title 18, United States Code, Section 2314.)

The bases for my knowledge and for the foregoing charge
are, in part, as follows:

3.     I have been personally involved in the investigation
of this matter.  This affidavit is based upon my investigation,
my conversations with other law enforcement agents, and my
examination of reports and records.  Because this affidavit is
being submitted for the limited purpose of establishing probable
cause, it does not include all the facts that I have learned
during the course of my investigation.  Where the contents of
documents and the actions, statements, and conversations of
others are reported herein, they are reported in substance and
in part, except where otherwise indicated.

4.     I have been a Special Agent with the FBI for three
years.  I am presently assigned to the Bank Fraud Squad of the
FBI's New York Field Office.  I have conducted investigations
into crimes against financial institutions and other white-
collar crimes and am familiar with the ways in which such crimes
are commonly conducted.

### The Defendant and Relevant Entities

5.     The Jewelry Company is one of the world's premier
high-end jewelers and is headquartered in midtown Manhattan.

6.     The Jewelry Reseller is a leading international buyer
and reseller of jewelry with an office in midtown Manhattan.

7.     Based on my conversations with representatives of the
Jewelry Company and my review of documents I have learned the

following about INGRID LEDERHAAS-OKUN, a/k/a "Ingrid Okun"
(OKUN), the defendant:

     a.    OKUN was a Vice President of Product Development
at the Jewelry Company, based in midtown Manhattan, from at
least in or about January 2011 until her employment was
terminated on or about February 13, 2013 as part of an overall
downsizing at the Jewelry Company.

     b.    OKUN's duties included ensuring that product
designs could be manufactured.  As part of her duties, OKUN had
the authority to check out jewelry belonging to the Jewelry
Company for work-related reasons, such as to provide the jewelry
to potential manufacturers to determine the cost of production.
Once such a determination was made, the jewelry would ordinarily
be returned to the Jewelry Company.

     c.    As part of her responsibilities, OKUN also had
the ability to "write off" inventory – that is, authorize the
cancellation of the cost of jewelry that had been checked out if
it had been rendered unusable in some way.  For example, if
jewelry samples from the Jewelry Company were checked out and
sent to a vendor to determine the cost of production, but the
jewelry was damaged in transit, the Jewelry Company would write
off, or cancel the costs, of the checked-out jewelry.  Usually,
however, the damaged jewelry pieces would nevertheless be sent
back to the Jewelry Company by the vendor to be destroyed.

     d.    Since at least in or about January 2011, OKUN has
resided in Darien, Connecticut (the "Connecticut Address").

<div align="center">Overview</div>

    8.    Between at least in or about January 2011 and in or
about February 2013, INGRID LEDERHAAS-OKUN, a/k/a "Ingrid Okun,"
the defendant, abused her position and authority at the Jewelry
Company to check out jewelry with a retail value of over $1.2
million.  This jewelry included, among other items, numerous
diamond bracelets in 18-carat gold; diamond drop and hoop
earrings in platinum or 18-carat gold; diamond rings in
platinum; rings with precious stones in 18-carat gold; and
platinum and diamond pendants.  She then sold some if not all of
this jewelry to the Jewelry Reseller, receiving, directly or
indirectly, in excess of $1.3 million from the Reseller for the
stolen jewelry.  OKUN gave false explanations for what happened
to the missing jewelry, such as claiming that she had left the
jewelry at the Jewelry Company upon her departure, or claiming
that it was lost or damaged.

<div align="center">3</div>

<u>OKUN Took Jewelry with a Retail Value of At Least $1.2 Million</u>
<u>from the Jewelry Company and Provided False Accounts Regarding</u>
<u>the Whereabouts of that Jewelry</u>

9.    Based on my conversations with representatives of the
Jewelry Company I have learned the following, in substance and
in part:

        a.    On or about February 14, 2013, the day after her
employment was terminated, representatives of the Jewelry
Company conducted an inventory review which revealed that since
in or about November 2012 INGRID LEDERHAAS-OKUN, a/k/a "Ingrid
Okun", had checked out approximately 165 pieces of jewelry with
a collective retail value of approximately $1.2 million, each
piece valued at under $10,000.  The Jewelry Company's policy was
to count every piece of inventory with a value of greater than
$25,000 every day that it was checked out.  Because of OKUN's
job responsibilities, she would have been aware of this policy.

        b.    Between on or about February 14, 2013, and on or
about February 27, 2013, Jewelry Company representatives
questioned OKUN by email and in a telephone interview about the
inventory she had checked out.  I have reviewed the email
correspondence between OKUN and the Jewelry Company
representatives and reviewed a summary of the telephone
conversation.  In those communications, OKUN acknowledged that
she had in fact checked out the $1.2 million worth of jewelry
inventory and she had not returned it.  However, OKUN gave
inconsistent accounts about the checked-out jewelry which were
contradicted by other information, as set forth below, in
substance and in part:

                i.  For example, on or about February 21, 2013,
                    OKUN stated in an email (the "February 21, 2013
                    Email") to a representative of the Jewelry
                    Company, regarding the missing jewelry:  "As
                    stated previously, my last day of work I left
                    the merchandise in my office.  Most pieces had
                    just arrived.  I was gathering samples for a
                    presentation."  Contrary to her representation,
                    the records of the Jewelry Company reflect that
                    the pieces that were missing were checked out
                    beginning in or about November 2012, and thus
                    had not "just arrived."

                ii. In both the February 21, 2013 Email, as well as
                    other correspondence, OKUN claimed that she had
                    checked out the pieces of jewelry for the

purpose of preparing a presentation for her supervisor, and that a draft PowerPoint for the presentation was saved on OKUN's office computer. However, OKUN's supervisor was unaware of any such presentation, and no draft PowerPoint related to any such presentation was found on OKUN's office computer.

    iii. In the February 21, 2013 Email OKUN indicated that she was in California, would be returning to Connecticut the following Monday, and would be available for a telephone call the following Tuesday (February 26) from Connecticut.

    iv. In a telephone conversation with representatives of the Jewelry Company on or about February 27, 2013, OKUN stated, in substance and in part, that the majority of the missing merchandise had been received from her assistant approximately two weeks earlier, on or about February 12, 2013. As noted above, the jewelry was actually checked out beginning in or about November 2012. OKUN further claimed that the checked-out jewelry was in a white envelope in the vicinity of her desk, and that corresponding printouts related to the particular pieces of jewelry were supposedly in a folder. However, shortly after OKUN's departure, representatives of the Jewelry Company searched OKUN's office and did not find any white envelope or the printouts.

    c. <u>November 2012 Write-off</u>: In or about November 2012, following an announcement by the Jewelry Company that it was going to undertake a full physical inventory review, OKUN reported to the Jewelry Company that approximately $1.5 million worth of jewelry which she had checked out would have to be written off. However, none of the jewelry OKUN checked out was ever returned to the Jewelry Company's stock, contrary to the usual practice.

<u>OKUN and Her Husband Received Over $1.3 Million from the Jewelry Reseller for Jewelry Belonging to the Jewelry Company Which OKUN or an Associate Falsely Claimed They Owned</u>

    10. Internal auditors for the Jewelry Company reviewed email messages in the Jewelry Company email account belonging to INGRID LEDERHAAS-OKUN, a/k/a "Ingrid Okun", the defendant (the

"OKUN Work Email Account"). Based on my conversations with them, and my own review of contents of the OKUN Work Email Account, I have learned that the OKUN Work Email Account had received emails forwarded from a personal email account that appears to belong to OKUN (the "OKUN Personal Email Account"). Approximately eighteen of these forwarded emails were originally sent from the same entity – the Jewelry Reseller, with an address listed in midtown Manhattan – to the OKUN Personal Email Account and contained, as attachments, "Purchase Forms" recording the sale of jewelry.

11. Based on my review of the Jewelry Reseller's Purchase Forms contained in the OKUN Work Email Account, as well as documentation from the Jewelry Reseller related to INGRID LEDERHAAS-OKUN, a/k/a "Ingrid Okun", the defendant, and OKUN's Husband, and conversations with representatives of the Jewelry Reseller, I have learned the following, in substance and in part:

a. In the upper left of each Purchase Form is a space for a name, address, telephone, and email address. According to representatives of the Jewelry Reseller, this space is for the name and contact information of the seller of the jewelry and the seller's mailing address. Many of the Purchase Forms I have reviewed contain the name INGRID OKUN with the Connecticut Address (her home address) hand-written in this section.

b. At the bottom of each Purchase Form is a typewritten representation: "I am selling the above listed items. They are my personal property and free of any legal encumbrances." Next to the representation is what appears to be a photocopy of a "Sign Here" Post-It sticker. The Purchase Forms I have reviewed with INGRID OKUN in the upper left as the seller contain what appears to be the signature of INGRID OKUN under this representation.

c. The Purchase Forms provide an area to list "Items," that is, the jewelry items being purchased by the Jewelry Reseller, and a column for "Amount," that is, the payment for each item, and at the bottom, the total payment.

d. Some of the Purchase Forms with INGRID OKUN listed as the seller simply have "group of jewelry" and the total payment hand-written. Others contain a more detailed itemization of the jewelry, also hand-written, sold to the Jewelry Reseller by OKUN. Still other Purchase Forms contain the same information in typed format, but without the

6

representation and signature described above. Where a jeweler
is listed in the description of the items, the Purchase Forms
list the Jewelry Company.

        e.   For example, a Purchase Form dated September 18,
2012, contains the following descriptions:

      (5) [Jewelry Company] plat dia bracelets
      (1) [Jewelry Company] plat/18k yg dia ring
      (3) pairs of [Jewelry Company] plat/18k yg dia earrings
      (1) [Jewelry Company] plat dia key pendant
      (1) pair of [Jewelry Company] plat dia earrings

Based on my involvement in this investigation, I believe that
"plat" is shorthand for platinum, "yg" is shorthand for yellow
gold, and "dia" is shorthand for diamond.

        f.   I have reviewed other Purchase Forms that
indicate that payment was made to OKUN's Husband. Those with
OKUN's Husband as a payment recipient have the name of a female
with an address in Sag Harbor, New York and a Gmail email
address listed as the seller ("Female-1"). Based on my review
of OKUN's Work and Personal Emails, I know that Female-1 is an
acquaintance of OKUN's.

        g.   According to representatives of the Jewelry
Reseller, at times the jewelry that was provided by OKUN or
Female-1 came with computer printouts that included information
such as the Jewelry Company's name in the upper left hand
corner; a photograph and brief description of the items; and
pricing information. Based on a review by the Jewelry Company's
representatives of such a printout, they are from the Jewelry
Company's internal product catalogue, and are available only to
Jewelry Company employees with access to the Jewelry Company's
internal computer system (the "Jewelry Company's Internal
Documentation").

        h.   According to representatives of the Jewelry
Reseller, the jewelry itemized in the Purchase Forms containing
OKUN's signature and listing OKUN's name as the seller was
received by mail by the Jewelry Reseller at its office in
midtown Manhattan. The Jewelry Reseller paid for each of these
jewelry purchases from OKUN by mailing a check sent from its
office in New York via Federal Express to OKUN at the
Connecticut Address.

        i.   In total, I have reviewed approximately 31
Purchase Forms reflecting approximately 31 separate transactions

between the Jewelry Reseller and OKUN between in or about January 2011 and February 2013 which reflect that the Jewelry Reseller paid OKUN approximately $714,585. In addition, I have reviewed approximately 43 Purchase Forms reflecting 43 separate transactions between the Jewelry Reseller and Female-1, in which OKUN's Husband was paid, resulting in approximately $580,040 payments from the Jewelry Reseller to OKUN's Husband. All of these Purchase Forms reflect transactions involving jewelry from the Jewelry Company. Thus, in total, between in or about January 2011 and February 2013, the Jewelry Reseller paid the OKUNs approximately $1.3 million for the Jewelry Company's jewelry.

12. I have reviewed an itemized inventory from the Jewelry Reseller summarizing its transactions with INGRID LEDERHAAS-OKUN, a/k/a "Ingrid Okun," the defendant, as well as transactions with Female-1 for which OKUN's Husband received payment (the "Jewelry Reseller's Inventory"). I have compared the Jewelry Reseller's Inventory with an itemized inventory from the Jewelry Company of the jewelry that OKUN checked out since in or about November 2012 that is missing (the "Jewelry Company's Inventory"). The Jewelry Reseller's Inventory lists over 200 jewelry items sold by OKUN or Female-1, the vast majority of which match the type and description of items that OKUN checked out and are missing as indicated in the Jewelry Company's Inventory. I have also reviewed the Jewelry Company's Internal Documentation that accompanied some of the items that OKUN or Female-1 provided to the Jewelry Reseller, and these documents also reflect that the items they sold to the Jewelry Reseller match items that OKUN had checked out from the Jewelry Company which remain missing. This jewelry includes, among other items, numerous diamond bracelets in 18-carat gold; diamond drop and hoop earrings in platinum or 18-carat gold; diamond rings in platinum; rings with precious stones in 18-carat gold; and platinum and diamond pendants.

13. I have reviewed records from a bank account belonging to INGRID LEDERHAAS-OKUN, a/k/a "Ingrid Okun", the defendant, and her husband (the "OKUN Bank Account"). Between in or about March 2011 and February 2013, approximately 75 checks from the Jewelry Reseller made out to either OKUN or OKUN's Husband were

deposited in the OKUN Bank Account. The checks from the Jewelry Reseller ranged in amount from approximately $7,525 to approximately $47,400, for a total of approximately $1.3 million in payments.

WHEREFORE, I respectfully request that an arrest warrant be issued for INGRID LEDERHAAS-OKUN, a/k/a "Ingrid Okun," the defendant, and that she be arrested and imprisoned or bailed, as the case may be.

ELLIOT C. MCGINNIS
Special Agent
Federal Bureau of Investigation

JUN 19 2013

Sworn to before me this
___ day of June 2013

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9

# Exhibit B

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    UNITED STATES OF AMERICA,                 New York, N.Y.

4              v.                              13 Cr. 560 (PGG)

5    INGRID LEDERHAAS-OKUN,

6                   Defendant.

7    ------------------------------x

8
                                               July 26, 2013
9                                              4:05 p.m.

10
     Before:
11
                    HON. PAUL G. GARDEPHE,
12
                                               District Judge
13

14                         APPEARANCES

15   PREET BHARARA
          United States Attorney for the
16        Southern District of New York
     BY:  ROSEMARY NIDIRY
17        Assistant United States Attorney

18   SABRINA SHROFF
          Attorney for Defendant
19

20

21

22

23

24

25

1          (In open court)

2          THE DEPUTY CLERK:  Call the case  United States of

3    America v. Lederhaas-Okun.

4          Is the government ready?

5          MS. NIDIRY:  Yes.  Good afternoon , your Honor.

6    Rosemary Nidiry for the government.  With me at counsel table

7    is special agent Elliot McGinnes.

8          THE DEPUTY CLERK:  For the defendant.

9          MS. SHROFF:  Good afternoon, your Honor.  ~~Federal~~

10   Defenders of New York, by Sabrina Shroff, on behalf of

11   Ms. Lederhaas-Okun, who is seated to my left.

12         THE COURT:  I am told that the defendant intends to

13   plead guilty to an information.  Is that correct, Ms. Shroff?

14         MS. SHROFF:  That is correct, your Honor.

15         THE COURT:  Then I will ask the defendant please

16   stand.

17         Mr. Ruocco, would you please swear in the defendant.

18         (Defendant sworn)

19         THE COURT:  Ms. Lederhaas-Okun, you should understand

20   that you are now under oath and if you answer any of my

21   questions falsely, your answers may later be used against you

22   in another prosecution for perjury or for making a false

23   statement.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  You are here this afternoon with

2     Ms. Shroff as your attorney, is that correct?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have you received a copy of the

5     information which reflects the charge against you?

6          THE DEFENDANT:  Yes, I have.

7          THE COURT:  And have you discussed the charge with

8     Ms. Shroff?

9          THE DEFENDANT:  Yes, I have.

10         THE COURT:  The information charges you with

11    interstate transportation of stolen property.  Do you wish me

12    to read the information to you now in open court?

13         THE DEFENDANT:  No.

14         THE COURT:  I have before me a waiver of indictment

15    form.  It appears to have been signed by you, by Ms. Shroff and

16    by my deputy Mr. Ruocco.

17         Is this your signature on the waiver of indictment

18    form?

19         THE DEFENDANT:  Yes, your Honor.

20         THE COURT:  Before you signed the waiver of indictment

21    form, did you discuss it with Ms. Shroff?

22         THE DEFENDANT:  Yes, your Honor.

23         THE COURT:  And did she explain the concept of waiver

24    of indictment to you?

25         THE DEFENDANT:  Yes.

1          THE COURT:  You understand that you have no obligation
2     to waive indictment?

3          THE DEFENDANT:  Yes.

4          THE COURT:  Have any threats been made against you or
5     any promises been made to you to induce you to waive
6     indictment?

7          THE DEFENDANT:  No.

8          THE COURT:  You should understand that if you did not
9     waive indictment, the government would be required to present
10    your case to a grand jury which would be asked to determine
11    whether there was probable cause to believe that the crime
12    described in the information was committed and that you
13    committed it.

14         Do you understand that?

15         THE DEFENDANT:  Yes, sir.

16         THE COURT:  You should further understand that the
17    grand jury might or might not choose to indict you.  Do you
18    understand that?

19         THE DEFENDANT:  Yes.

20         THE COURT:  And do you further understand that by
21    signing the waiver of indictment you have given up your right
22    to have your case presented to a grand jury and that instead
23    the case will proceed against you on the basis of the
24    information signed by the United States Attorney?

25         THE DEFENDANT:  Yes.

THE COURT: I find that you have knowingly and voluntarily waived your right to have your case presented to a grand jury and the case will proceed by way of information.

I also have an advice of rights form before me that appears to have been signed by you and by Ms. Shroff. Is this your signature on the advice of rights form?

THE DEFENDANT: Yes, your Honor.

THE COURT: I will mark it as Exhibit 1 to these proceedings.

And then finally I have a plea agreement in front of me which appears to have been signed by you and by Ms. Shroff and by representatives of the U.S. Attorney's Office.

Is this your signature on the plea agreement?

THE DEFENDANT: Yes, your Honor.

THE COURT: All right. The plea agreement will be marked as Exhibit 2 to these proceedings.

Before deciding whether to accept your guilty plea, I must ask you certain questions. It is important you answer these questions honestly and completely. The purpose of these proceedings is to make sure that you understand your rights and for me to make certain that you are pleading guilty of your own free will and to make sure that you are pleading guilty because you are in fact guilty and not for some other reason.

Do you understand that?

THE DEFENDANT: Yes, your Honor.

1          THE COURT:  If you don't understand any of my

2     questions or you want to consult with Ms. Shroff at any time,

3     please say so, because it is important you understand every

4     question before you answer.

5          Could you state your full name for the record.

6          THE DEFENDANT:  Ingrid Lederhaas- Okun.

7          THE COURT:  How old are you?

8          THE DEFENDANT:  46.

9          THE COURT:  How far did you go in school?

10         THE DEFENDANT:  Graduated from university and did

11    graduate studies as well.

12         THE COURT:  Have you ever been addicted to any drugs

13    or alcohol or been treated for any addiction?

14         THE DEFENDANT:  No, your Honor.

15         THE COURT:  Are you now or have you recently been

16    under the care of any kind of doctor?

17         THE DEFENDANT:  No.

18         THE COURT:  In the past 24 hours have you taken any

19    drugs, medicine or pills or drunk any alcohol?

20         THE DEFENDANT:  No, your Honor.

21         THE COURT:  Is your mind clear today and do you

22    understand what is happening?

23         THE DEFENDANT:  Yes, your Honor.

24         THE COURT:  Ms. Shroff, do you have any doubt as to

25    your client's competence to plead guilty this afternoon?

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

1        MS. SHROFF:  I do not, your Honor.

2        THE COURT:  Then on the basis of Ms. Lederhaas-Okun's

3   responses to my questions and my observations of her demeanor,

4   I do find that she is fully competent to enter an informed

5   plea.

6        Ms. Lederhaas-Okun, have you had  enough time to

7   discuss your case with Ms. Shroff as well as your intention to

8   plead guilty today?

9        THE DEFENDANT:  Yes, your Honor.

10       THE COURT:  Has she told you about the consequences of

11  pleading guilty?

12       THE DEFENDANT:  Yes.

13       THE COURT:  And are you satisfied with her

14  representation of you?

15       THE DEFENDANT:  Yes, your Honor.

16       THE COURT:  I must explain certain constitutional

17  rights that you have.  These are rights you will be giving up

18  if you enter a guilty plea.

19       Listen carefully to what I am about to say.  If you

20  don't understand something, stop me and either myself or

21  Ms. Shroff will explain the matter to you more fully.

22       Under the Constitution and laws of the United States,

23  you have a right to a speedy and public trial by a jury on the

24  charge against you contained in the information.

25       Do you understand that?

1      THE DEFENDANT:  Yes.

2      THE COURT:  If there were a trial., you would be

3  presumed innocent and the government would! be required to prove

4  your guilt by competent evidence and beyon.d a reasonable doubt;

5  you would not have to.prove you were innoc ent at a trial.

6      Do you understand that?

7      THE DEFENDANT:  Yes.

8      THE COURT:  If there were a trial , a jury composed of

9  12 people selected from this district would have to agree

10  unanimously before you could be found guilty.

11      Do you understand that?

12      THE DEFENDANT:  Yes, your Honor.

13      THE COURT:  If you decide to go to trial, at that

14  trial and at every stage of your case you would have the right

15  to be represented by an attorney and if you could not afford

16  one, an attorney would be appointed to repr esent you at

17  government expense and at no cost to you.

18      If you decided to retain a lawyer and you ran out of

19  money, an attorney would be appointed to co ntinue to represent

20  you, to handle your case all the way throug h trial and not just

21  for purposes of a guilty plea.  So your dec ision to plead

22  guilty here today should not depend on whet her you can afford a

23  lawyer.

24      Do you understand that?

25      THE DEFENDANT:  Yes, I do.

1          THE COURT:  If there were a trial, you would have the

2     right to see and hear all the evidence against you and your

3     attorney could cross-examine the witnesses.  You would have a

4     right to have your attorney object to the government's

5     evidence, to offer evidence on your behalf  if you so desired.

6     You would have the right to have subpoenas  issued to compel

7     witnesses to testify in your defense.

8          Do you understand that?

9          THE DEFENDANT:  Yes, your Honor.

10         THE COURT:  If there were a trial, you would have the

11    right to testify if you wanted to, but no one could force you

12    to testify if you did not want to.  Furthermore, no inference

13    or suggestion of guilt could be drawn if you chose not to

14    testify at a trial.

15         Do you understand that?

16         THE DEFENDANT:  Yes.

17         THE COURT:  If you were convicted  at a trial, you

18    would have the right to appeal that verdict  to a higher court.

19         Do you understand that?

20         THE DEFENDANT:  Yes.

21         THE COURT:  Even now as you are entering this plea you

22    have the right to change your mind and plead not guilty and go

23    to trial on the charge contained in the information.

24         Do you understand that?

25         THE DEFENDANT:  Yes.

1          THE COURT:  If you plead guilty and I accept your

2     plea, you will give up your right to a trial and the other

3     rights I just discussed other than the right to an attorney

4     which you have regardless of whether or not you plead guilty.

5          If you do plead guilty, I will enter a judgment of

6     guilty and sentence you on the basis of your plea after I have

7     considered a presentence report and the arguments from your

8     lawyer and the prosecutor.

9          Do you understand that?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  If you plead guilty, you will have to give

12     up your right not to incriminate yourself because I will ask

13     you questions about what you did in order to assure myself that

14     you are guilty as charged and you will have to admit and

15     acknowledge your guilt.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  I am required to tell you the elements of

19     the offense that is set forth in the information.  This is what

20     the government would have to prove beyond a reasonable doubt if

21     you were to go to trial.

22          As I mentioned, the crime charged in the information

23     is referred to as interstate transportation of stolen property.

24     The government would have to prove that the goods, wares,

25     merchandise, securities or money at issue were stolen,

1    converted or taken by fraud.  Second, that you transported,

2    transmitted or transferred or caused to be transported or

3    transmitted the property at issue in interstate or foreign

4    commerce.  Third, the government would have to prove that at

5    the time of the transportation or transmission you knew that

6    the property involved was stolen, converted or taken by fraud.

7    And fourth, that the value of the property was $5,000 or more.

8         Do you understand that these are the elements of the

9    offense charged in the information?

10        THE DEFENDANT:  Yes, your Honor.

11        THE COURT:  I must tell you the maximum and the

12   minimum possible penalty for this crime.  The maximum means the

13   most punishment that could possibly be imposed.  It does not

14   necessarily mean that is what you will receive, but you have to

15   understand that by pleading guilty you are exposing yourself to

16   the possibility of receiving any combination of punishments up

17   to the maximum I am about to describe.

18        Do you understand that?

19        THE DEFENDANT:  Yes, sir.

20        THE COURT:  The offense carries a maximum sentence of

21   ten years' imprisonment, a maximum term of three years'

22   supervised release, a maximum fine of the greatest of $250,000,

23   twice the gross pecuniary gain derived from the offense or

24   twice the gross pecuniary loss, whichever is greatest, and

25   finally, a mandatory $100 special assessment.

1    You should understand that parole has been abolished

2  in the federal system and that if you are sentenced to prison,

3  you will not be released early on parole.  There is a limited

4  opportunity to earn credit for good behavior, but you will have

5  to serve at least 85 percent of the time you are sentenced to.

6    Do you understand that?

7    THE DEFENDANT:  Yes, your Honor.

8    THE COURT:  As part of your sentence I have the power

9  to order that you make restitution to any party injured as a

10  result of your criminal conduct and I can also order you to

11  forfeit certain property to the government.

12    Do you understand that?

13    THE DEFENDANT:  Yes, sir.

14    THE COURT:  Being convicted of a felony may have other

15  consequences, such as the loss of licenses or the right to

16  possess a firearm.  If you are a citizen of the United States,

17  you could lose your right to vote.  If you are not a citizen of

18  the United States, you will likely lose your right to remain in

19  the United States and you may be deported.

20    This is not a full list of the consequences of a

21  felony conviction, but these are examples.

22    Do you understand that?

23    THE DEFENDANT:  Yes, your Honor.

24    THE COURT:  There are sentencing guidelines that I am

25  required to consult in order to determine an appropriate

1    sentence in your case.  Have you talked with Ms. Shroff about

2    the sentencing guidelines?

3            THE DEFENDANT:  Yes, your Honor.

4            THE COURT:  You should understand I will not be able

5    to determine what the recommended sentence is under the

6    guidelines until after a presentence report has been prepared

7    and your lawyer and the prosecutor have had a chance to comment

8    on the presentence report.

9            Do you understand that?

10           THE DEFENDANT:  Yes, sir.

11           THE COURT:  You should understand that after I

12   determine what the recommended sentence is under the guidelines

13   and whether a departure, either upward or downward, from that

14   range is called for, I will then determine what an appropriate

15   sentence is in your case, having in mind not only the

16   sentencing guidelines but all the factors set forth in the

17   sentencing statute, including, among other things, the

18   seriousness of the offense, the need to promote respect for the

19   law, to provide just punishment and to afford adequate

20   deterrence to criminal conduct.

21           Do you understand that?

22           THE DEFENDANT:  Yes, your Honor.

23           THE COURT:  You should understand that if your

24   attorney or anyone else has attempted to estimate or predict

25   what your sentence will be that their estimate or prediction

1    could be wrong.

2              Do you understand that?

3              THE DEFENDANT:  Yes, your Honor.

4              THE COURT:  You should also understand that even if

5    your sentence is different from what your attorney or anyone

6    else told you it might be or if it is different than what you

7    expect, you will still be bound by your guilty plea and you

8    will not be allowed to withdraw your plea of guilty.

9              Do you understand that?

10             THE DEFENDANT:  Yes, sir.

11             THE COURT:  I have the plea agreement that I mentioned

12   a moment ago before me that I marked as Exhibit 2.  You told me

13   that you signed it.

14             Did you read the plea agreement before you signed it?

15             THE DEFENDANT:  Yes, I did.

16             THE COURT:  And did you discuss it with Ms. Shroff

17   before you signed it?

18             THE DEFENDANT:  Yes.

19             THE COURT:  And did you fully understand all the terms

20   of the agreement before you signed it?

21             THE DEFENDANT:  Yes, your Honor.

22             THE COURT:  Does this agreement constitute your

23   complete and total understanding of the entire agreement

24   between you and the government as to this matter?

25             THE DEFENDANT:  Yes.

1          THE COURT:  Has anyone offered you any inducements or

2     threatened you or forced you to plead guilty or to enter into

3     this plea agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  You should understand that one of the

6     terms of the agreement limits your right to appeal, and in

7     particular, the agreement provides that as long as I sentence

8     you to a term of imprisonment of 46 months or less you would

9     not have the right to appeal your sentence or to file any

10    collateral challenge attacking the legality of your sentence.

11         Do you understand that?

12         THE DEFENDANT:  Yes, your Honor.

13         THE COURT:  Ms. Shroff, do you know of any valid

14    defense that would prevail at trial or any other reason why

15    your client should not be permitted to plead guilty this

16    afternoon?

17         MS. SHROFF:  I do not, your Honor.

18         THE COURT:  And, Ms. Nidiry, does the government

19    represent there is an adequate factual basis to support a

20    guilty plea?

21         MS. NIDIRY:  Yes, your Honor.

22         THE COURT:  All right.

23         MS. SHROFF:  Your Honor, may I have a second with the

24    government?

25         THE COURT:  Yes, please.  Go right ahead.

1           (Pause)

2           MS. SHROFF:  Thank you, your Honor.

3           THE COURT:  Yes.  As I was saying, Ms. Lederhaas-Okun,

4    we have reached the point in the proceedings where I need you

5    to tell me what you did that makes you believe that you are

6    guilty of the crime charged in the information.

7           THE DEFENDANT:  During 2008 until 2013, I was employed

8    by Tiffany & Company, which is located in New York.  From

9    Tiffany I stole jewelry in excess of $5,000.  I took it to my

10   home in Connecticut.  I knew it was illegal to steal, and I did

11   so regardless.

12          THE COURT:  I'm sorry.  I missed the last.  What did

13   you say at the end?

14          THE DEFENDANT:  I knew it was illegal to steal and I

15   did so regardless, and for this I'm very sorry.

16          THE COURT:  And the offices of Tiffany I assume are in

17   Manhattan?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Ms. Nidiry, do you wish me to ask the

20   defendant any other questions?

21          MS. NIDIRY:  No, your Honor.  I think that covers the

22   allocution.

23          There are two issues that I just wanted to point out

24   from the plea agreement.  First of all, that there is, attached

25   to the plea agreement is a consent order of forfeiture where

1    the defendant specifically agrees to forfeit a money judgment

2    of $2,114,873, as well as particular items from the jewelry

3    company that were seized from her residence at the time of her

4    arrest, as well as there is also a restitution agreement that

5    she agrees to a restitution amount of $2,239,873.  I think that

6    is all on the bottom of page 4.

7              I just wanted to state for the record that the parties

8    have agreed that to the extent that those seized items, the

9    jewelry items are returned to the victim company that we will

10   work to reach a good faith understanding of the value of those

11   items so they can be credited against that money judgment of

12   the restitution amount to the jewelry company.

13             THE COURT:  All right.

14             So, Ms. Lederhaas-Okun, the plea agreement, as the

15   assistant just said, provides for a restitution amount of at

16   least $2,239,873.  Do you understand that that is a term of the

17   plea agreement?

18             THE DEFENDANT:  Yes, your Honor.

19             THE COURT:  And also that in the plea agreement you

20   have agreed not to appeal any forfeiture amount less than or

21   equal to $2,114,873.

22             Do you understand that that is a term of the plea

23   agreement as well?

24             THE DEFENDANT:  Yes, your Honor.

25             THE COURT:  Any other questions, Ms. Nidiry, you want

1    me to put to the defendant?

2              MS. NIDIRY:  No, your Honor.

3              THE COURT:  Then I will ask you now,

4    Ms. Lederhaas-Okun, are you pleading guilty voluntarily and of

5    your own free will?

6              THE DEFENDANT:  Yes, your Honor.

7              THE COURT:  And are you pleading guilty because you

8    are in fact guilty?

9              THE DEFENDANT:  Yes, your Honor.

10             THE COURT:  I will ask you now, how do you plead as to

11   the charge in the information?  Guilty or not guilty?

12             THE DEFENDANT:  Guilty.

13             THE COURT:  Because you acknowledge that you are

14   guilty as charged in the information, because I find that you

15   know your rights and you are waiving them knowingly and

16   voluntarily, because I find that your plea is entered knowingly

17   and voluntarily and is supported by an independent basis in

18   fact containing each of the essential elements of the crime

19   charged in the information, I accept your guilty plea and

20   adjudge you guilty of the offense to which you have pled

21   guilty.

22             Does the government wish me to allocute the defendant

23   any further with respect to the forfeiture aspect of her plea?

24             MS. NIDIRY:  I think it was both the money judgment as

25   well as the seized items.  So, yes, if the court could just

1    make sure the seized items as well.

2           THE COURT:  The information includes a forfeiture

3    allegation in which the government puts you on notice,

4    Ms. Lederhaas-Okun, that it is seeking forfeiture of any

5    property, real or personal, constituting or derived from

6    proceeds that are traceable to the offense that is set forth in

7    the information, including, but not limited to, $2,114,873 in

8    United States currency, representing in the aggregate the

9    property that the government alleges that you stole, as well as

10   they are seeking forfeiture of any items that were seized from

11   your residence at the time of your arrest that are items that

12   are or have been produced or available for purchase from

13   Tiffany's.

14          Do you admit the forfeiture allegations set forth in

15   the information?

16          THE DEFENDANT:  Yes, your Honor.

17          THE COURT:  All right.  I order a presentence report.

18   I ask you to cooperate with the people who prepare the report

19   because it will be important to me in making my decision as to

20   what your sentence will be.

21          You and Ms. Shroff will have an opportunity to review

22   the presentence report before sentencing.  I urge you to review

23   the report carefully with her.  If there are any mistakes in

24   the report, point them out to Ms. Shroff so that she can point

25   them out to me so that I don't proceed on the basis of mistaken

1   information.

2          I am going to set the matter down for sentencing on

3   December 10, 2013, at 2:30.

4          Sentencing submissions by the defendant will be due on

5   November 26th.  Any submission by the government will be due on

6   December 3rd.

7          I assume the government is content with the bail

8   conditions that are currently in place.

9          MS. NIDIRY:  Yes.

10          THE COURT:  So bail will be continued.

11          Anything else we need to discuss today?

12          MS. NIDIRY:  No, your Honor.

13          MS. SHROFF:  Your Honor, I think the government is

14   aware that we have started good faith steps to make restitution

15   prior to the sentencing date and will continue to do so until

16   that time.

17          THE COURT:  All right.  Then we are adjourned.

18          (Adjourned)

19

20

21

22

23

24

25

Exhibit C

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/29/13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - x
                                     :
UNITED STATES OF AMERICA             :      CONSENT PRELIMINARY
                                     :      ORDER OF FORFEITURE/
        -v.-                         :      MONEY JUDGMENT
                                     :      13 Cr.   (PGG)
INGRID LEDERHAAS-OKUN,               :         560
a/k/a "INGRID OKUN,"                 :
                                     :
                                     :
           Defendant.                :
                                     :
- - - - - - - - - - - - - - - - - - x

        WHEREAS, on or about July 26, 2013, INGRID LEDERHAAS-

OKUN, a/k/a "INGRID OKUN," (the "defendant") was charged in a one-

count Information with interstate transportation of stolen

property, in violation of Title 18, United States Code, Section

2314 (Count One);

        WHEREAS, the Information included a forfeiture allegation

as to Count One, seeking forfeiture to the United States, pursuant

to Title 18, United States Code, Section 982(a)(1)() and Title 28,

United States Code, Section 2461, of any property real or personal,

constituting, or derived from, proceeds traceable to such offense,

including but not limited to the following:

> A)   Approximately $2,114,873 in United States currency,
>      in that such sum in aggregate is property
>      representing the amount of proceeds obtained as a
>      result of the offense (the "Money Judgment"); and
>
> B)   All right, title and interest of the defendant in
>      any items seized from her residence at the time of
>      her arrest on July 2, 2013 that are items that are
>      or have been produced by or available for purchase
>      from the Jewelry Company (the "Specific Property");

WHEREAS, on or about July 26, 2013, the defendant pled guilty to Count One of the Information and admitted the forfeiture allegation as to Count One, pursuant to a plea agreement with the Government wherein the defendant agreed to the Money Judgment and to the forfeiture of the Specific Property;

WHEREAS, the defendant consents to the forfeiture of all of her right, title, and interest in the Specific Property and to the Money Judgment, representing the amount of proceeds obtained as a result of the offense alleged in Count One of the Information;

WHEREAS, pursuant to Title 21, United States Code, Section 853(g), and Rules 32.2(b)(3), and 32.2(b)(6), of the Federal Rules of Criminal Procedure, the Government is now entitled, pending any assertion of third-party claims, to reduce the Specific Property to its possession and to notify any person who reasonably appears to be a potential claimant of its interest therein;

IT IS HEREBY STIPULATED AND AGREED, by and between the plaintiff, United States of America, by its attorney Preet Bharara, United States Attorney, Assistant United States Attorney Rosemary Nidiry, of counsel, and the defendant, and her counsel, Sabrina Shroff, Esq. that:

1.    As a result of the offense charged in Count One of the Information, to which the defendant pled guilty, a Money Judgment in the amount of $2,114,873 shall be entered against the defendant, as part of her criminal sentence.

2

2.     Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, upon entry of this Consent Preliminary Order of Forfeiture/Money Judgment, this Order is final as to the defendant, INGRID LEDERHAAS-OKUN, and shall be deemed part of the sentence of the defendant and shall be included in the judgment of conviction therewith.

3.     Upon execution of this Consent Preliminary Order of Forfeiture/Money Judgment and pursuant to Title 21, United States Code, Section 853, the United States Marshals Service (or its designee) shall be authorized to deposit the payments on the Money Judgment in the Assets Forfeiture Fund, and the United States shall have clear title to such forfeited property.

4.     All payments on the outstanding Money Judgment shall be made by postal money order, bank or certified check, and made payable, in this instance to the United States Marshals Service (or its designee), and delivered by mail to the United States Attorney's Office, Southern District of New York, Attn: Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007 and shall indicate the defendant's name and case number.

5.     All of the defendant's right, title and interest in the Specific Property is hereby forfeited to the United States for disposition in accordance with the law, subject to the provisions of Title 21, United States Code, Section 853(n).

6.    Upon entry of this Consent Preliminary Order of Forfeiture/Money Judgment, the United States Marshals Service (or its designee) is authorized to seize the Specific Property and hold the Specific Property in its secure custody and control.

7.    The defendant agrees that she will not file a claim or a petition for remission or mitigation in any forfeiture proceeding involving the Specific Property and will not cause or assist anyone else in doing so.  The defendant also agrees to take all necessary steps to pass clear title to the Specific Property to the United States, including, but not limited to, the execution of all necessary documentation.

8.    Pursuant to Title 21, United States Code, Section 853(n)(1), Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure, and Rules G(4)(a)(iv)(C) and G(5)(a)(ii) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, the United States shall publish for at least thirty (30) consecutive days on the official government internet forfeiture site, www.forfeiture.gov, notice of this Consent Preliminary Order of Forfeiture/Money Judgment.  Any person, other than the defendant in this case, claiming an interest in the Specific Property must file a petition within sixty (60) days from the first day of publication of the notice on this official government internet site, or no later than thirty-five (35) days from the mailing of actual notice, whichever is earlier.

4

9.     The notice shall state that the petition shall be for a hearing to adjudicate the validity of the petitioner's alleged interest in the Specific Property, shall be signed by the petitioner under penalty of perjury, and shall set forth the nature and extent of the petitioner's right, title and interest in the Specific Property and any additional facts supporting the petitioner's claim and the relief sought, pursuant to Title 21, United States Code, Section 853(n).

10.     Pursuant to Rule 32.2(b)(6) of the Federal Rules of Criminal Procedure, the Government shall send notice to any person who reasonably appears to be a potential claimant with standing to contest the forfeiture in the ancillary proceeding.

11.     Upon adjudication of all third-party interests, this Court will enter a Final Order of Forfeiture with respect to the Specific Property pursuant to Title 21, United States Code, Section 853(n) and Rule 32.2(c)(2) of the Federal Rules of Criminal Procedure, in which all third-party interests will be addressed.

12.     The Court shall retain jurisdiction to enforce this Order, and to amend it as necessary, pursuant to Federal Rule of

Criminal Procedure 32.2(e).

13.   The Clerk of the Court shall forward three certified copies of this Order to Assistant United States Attorney Alexander Wilson, Asset Forfeiture Unit, One St. Andrew's Plaza, New York, New York 10007.

AGREED AND CONSENTED TO:

PREET BHARARA
United States Attorney for the
Southern District of New York
Attorney for Plaintiff

By: _____          July 26, 2015
    ROSEMARY NIDIRY                     DATE
    Assistant United States Attorney
    One St. Andrew's Plaza
    New York, NY 10007
    (212)637-1063


By: _____          7/26/2013
    INGRID LEDERHAAS-OKUN               DATE
    Defendant


By: _____          7/26/13
    SABRINA SHROFF, ESQ.                DATE
    Attorney for Defendant


SO ORDERED:

_____               July 26, 2013
HONORABLE PAUL G. GARDEPHE              DATE
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF NEW YORK

Exhibit D

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Southern District of New York

| | |
|---|---|
| UNITED STATES OF AMERICA <br> **v.** <br> INGRID LEDERHAAS-OKUN | ) **JUDGMENT IN A CRIMINAL CASE** <br> ) <br> ) Case Number:  1:13-CR-00560-01 (PGG) <br> ) <br> ) USM Number: 68903-054 <br> ) <br> ) Sabrina Shroff <br>      Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)      1

☐ pleaded nolo contendere to count(s) _____
   which was accepted by the court.

☐ was found guilty on count(s) _____
   after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 18 USC 2314 | Interstate Transportation of Stolen Property | 6/30/2013 | 1 |

The defendant is sentenced as provided in pages 2 through ___6___ of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s) _____

☐ Count(s) _____  ☐ is  ☐ are  dismissed on the motion of the United States.

   It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

12/23/2013
Date of Imposition of Judgment

*Paul Gardephe*
Signature of Judge

Hon. Paul G. Gardephe          U.S.D.J.
Name and Title of Judge

Dec. 27, 2013
Date

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/30/13

AO 245B    (Rev. 09/11) Judgment in Criminal Case
           Sheet 2 — Imprisonment

Judgment — Page __2__ of __6__

DEFENDANT: INGRID LEDERHAAS-OKUN
CASE NUMBER: 1:13-CR-00560-01 (PGG)

# IMPRISONMENT

The defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of:

> 1 year and 1 day.

☑ The court makes the following recommendations to the Bureau of Prisons:

It is recommended that the defendant be incarcerated at FPC Alderson in West Virginia.

☐ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

    ☐ at _____ ☐ a.m. ☐ p.m.  on _____ .

    ☐ as notified by the United States Marshal.

☑ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

    ☑ before 2 p.m. on    3/24/2014 _____ .

    ☐ as notified by the United States Marshal.

    ☐ as notified by the Probation or Pretrial Services Office.

# RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____

a _____ , with a certified copy of this judgment.

_____
UNITED STATES MARSHAL

By _____
DEPUTY UNITED STATES MARSHAL

AO 245B      (Rev. 09/11) Judgment in a Criminal Case
             Sheet 3 — Supervised Release

Judgment—Page ___3___ of ___6___

DEFENDANT:  INGRID LEDERHAAS-OKUN
CASE NUMBER:  1:13-CR-00560-01 (PGG)

# SUPERVISED RELEASE

Upon release from imprisonment, the defendant shall be on supervised release for a term of :

1 year.

The defendant must report to the probation office in the district to which the defendant is released within 72 hours of release from the custody of the Bureau of Prisons.

The defendant shall not commit another federal, state or local crime.

The defendant shall not unlawfully possess a controlled substance. The defendant shall refrain from any unlawful use of a controlled substance. The defendant shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

☑  The above drug testing condition is suspended, based on the court's determination that the defendant poses a low risk of future substance abuse. *(Check, if applicable.)*

☑  The defendant shall not possess a firearm, ammunition, destructive device, or any other dangerous weapon. *(Check, if applicable.)*

☑  The defendant shall cooperate in the collection of DNA as directed by the probation officer. *(Check, if applicable.)*

☐  The defendant shall comply with the requirements of the Sex Offender Registration and Notification Act (42 U.S.C. § 16901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in which he or she resides, works, is a student, or was convicted of a qualifying offense. *(Check, if applicable.)*

☐  The defendant shall participate in an approved program for domestic violence. *(Check, if applicable.)*

If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

The defendant must comply with the standard conditions that have been adopted by this court as well as with any additional conditions on the attached page.

# STANDARD CONDITIONS OF SUPERVISION

1)  the defendant shall not leave the judicial district without the permission of the court or probation officer;

2)  the defendant shall report to the probation officer in a manner and frequency directed by the court or probation officer;

3)  the defendant shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;

4)  the defendant shall support his or her dependents and meet other family responsibilities;

5)  the defendant shall work regularly at a lawful occupation, unless excused by the probation officer for schooling, training, or other acceptable reasons;

6)  the defendant shall notify the probation officer at least ten days prior to any change in residence or employment;

7)  the defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician;

8)  the defendant shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;

9)  the defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer;

10) the defendant shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view of the probation officer;

11) the defendant shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;

12) the defendant shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court; and

13) as directed by the probation officer, the defendant shall notify third parties of risks that may be occasioned by the defendant's criminal record or personal history or characteristics and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 3A — Supervised Release

Judgment—Page    4    of    6

DEFENDANT:  INGRID LEDERHAAS-OKUN
CASE NUMBER:  1:13-CR-00560-01 (PGG)

## ADDITIONAL SUPERVISED RELEASE TERMS

1.  The Defendant shall provide the probation officer with access to any requested financial information.

2.  If deemed necessary by the Probation Office, the defendant shall participate in a mental health program approved by the U.S. Probation Office.  The Defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider.  I authorize the release of available psychological and psychiatric evaluations and reports to the health care provider.

3.  The Defendant is to report to the nearest Probation Office within 72 hours of release from custody.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
      Sheet 5 — Criminal Monetary Penalties

|  |  | Judgment — Page | 5 | of | 6 |
|---|---|---|---|---|---|

DEFENDANT:  INGRID LEDERHAAS-OKUN
CASE NUMBER:  1:13-CR-00560-01 (PGG)

# CRIMINAL MONETARY PENALTIES

    The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

| | **Assessment** | **Fine** | **Restitution** |
|---|---|---|---|
| **TOTALS** | $  100.00 | $ | $  2,239,873.00 |

☐  The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☑  The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

    If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below. However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| Name of Payee | Total Loss* | Restitution Ordered | Priority or Percentage |
|---|---|---|---|
| Clerk | $2,239,873.00 | $2,239,873.00 | |
| United States District Court | | | |
| Southern District of New York | | | |
| 500 Pearl Street | | | |
| New York, NY 10007 | | | |
| for disbursement to Tiffany & Co. | | | |
| | | | |
| | | | |
| | | | |
| **TOTALS** | $  2,239,873.00 | $  2,239,873.00 | |

☐  Restitution amount ordered pursuant to plea agreement  $ _____

☐  The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f). All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☑  The court determined that the defendant does not have the ability to pay interest and it is ordered that:

    ☑  the interest requirement is waived for the   ☐ fine   ☑ restitution.

    ☐  the interest requirement for the   ☐ fine   ☐ restitution is modified as follows:

* Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

AO 245B    (Rev. 09/11) Judgment in a Criminal Case
           Sheet 6 — Schedule of Payments

Judgment — Page   6   of   6

DEFENDANT:  INGRID LEDERHAAS-OKUN
CASE NUMBER:  1:13-CR-00560-01 (PGG)

# SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

**A** ☑ Lump sum payment of $ ___100.00___ due immediately, balance due

    ☐ not later than _____ , or
    ☐ in accordance ☐ C, ☐ D, ☐ E, or ☐ F below; or

**B** ☐ Payment to begin immediately (may be combined with ☐ C, ☐ D, or ☐ F below); or

**C** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

**D** ☐ Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of
    _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a
    term of supervision; or

**E** ☐ Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from
    imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

**F** ☑ Special instructions regarding the payment of criminal monetary penalties:

    The restitution amount of $2,239,873 is to be paid in monthly installments of 10% of the Defendant's gross monthly
    income over a period of supervision to commence 30 days after release from custody.

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐ Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number)*, Total Amount, Joint and Several Amount,
    and corresponding payee, if appropriate.

☐ The defendant shall pay the cost of prosecution.

☐ The defendant shall pay the following court cost(s):

☑ The defendant shall forfeit the defendant's interest in the following property to the United States:

    Forfeiture is ordered as set forth in the preliminary order of forfeiture previously entered in this case.

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) penalties, and (8) costs, including cost of prosecution and court costs.